UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| ANTHONY MCCLENDON EL,<br>    Plaintiff,<br>v.<br><br>HEIDI WASHINGTON, *et al.*,<br>    Defendants.<br>_____/ | Case No. 23-10739<br><br>Judith E. Levy<br>United States District Judge<br><br>Curtis Ivy, Jr.<br>United States Magistrate Judge |

**REPORT AND RECOMMENDATION ON DEFENDANTS MOTION TO DISMISS (ECF No. 27) AND PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION (ECF No. 17)**

**I.  BACKGROUND**

Plaintiff filed this prisoner civil rights suit on March 30, 2023.  (ECF No. 1).  He also filed a motion for preliminary injunction.  (ECF No. 17).  Defendants moved to dismiss the complaint during October 2023, then filed an amended motion to dismiss on December 4, 2023.  (ECF No. 27).  Counsel was appointed to represent Plaintiff.  (ECF No. 25).  Plaintiff, through counsel, responded to the amended motion.  (ECF No. 29).  This matter was referred to the undersigned for all pretrial matters.  (ECF No. 26).

This lawsuit is about Plaintiff's past criminal conviction of criminal sexual conduct ("CSC") and the Michigan Department of Corrections ("MDOC") using that past conviction to impact Plaintiff's chances of parole.  He alleges that his

Fourteenth Amendment due process rights are being violated because the MDOC classified him for the Michigan Sexual Abuse Prevention Program ("MSAPP"), and conditions his parole on participation in the program. He contends that he should be forced to undergo sexual abuse therapy without first being given a hearing and chance to be heard because he no longer has an active sexual assault conviction. Plaintiff began serving a sentence for multiple crimes, including CSC, in 1986. The CSC sentence was discharged and became inactive in May 1999. (ECF No. 27-2, PageID.337). He continued serving sentences on other crimes and is still in custody. In June 2003, the MDOC issued a notice of a change in mental health services. It stated that Plaintiff served his sentence on the CSC charge, and as such, the recommendation that he receive sex offender therapy services was changed to a recommendation that he receive assaultive offender therapy. (ECF No. 1, PageID.39). During January 2005, Plaintiff pleaded guilty to assaulting a female corrections officer and was sentenced to 3-20 years in prison. (ECF No. 27-2, pageID.337). That assault conviction was not a sex offense, though he claimed he had a sexual relationship with the officer.

On June 15, 2017, Limited Master Social Worker defendant Uchendu evaluated Plaintiff using a Static-99R test, determining that he had a "Moderate/High" level of risk for sexual re-offending. (ECF No. 1, PageID.15-16). Based on that assessment, it was recommended that Plaintiff take the

MSAPP.  (*Id.* at PageID.25).  Prisoners in the program are required to be housed in a unit with other MSAPP participants.  No psychiatrist has evaluated him or declared that he should undergo that kind of treatment.  (*Id.* at PageID.7, ¶ 21).

Plaintiff briefly engaged in MSAPP programming but was removed for failure to comply with the requirements.  (*Id.* at PageID.16-20).  He now refuses to join the MSAPP.  He is denied parole because of his refusal to engage in the program.  (*Id.* at PageID.8).  He requests prospective injunctive relief in the form of a hearing to contest the requirement that he fulfill the MSAPP.  The Defendants are MDOC employees who were all allegedly involved in the improper classification.

The parties stipulated to dismiss all claims except Plaintiff's procedural due process claim with a request for prospective injunctive relief.  All other claims and requests for relief were dismissed without prejudice.  (ECF No. 32).  Thus, this report and recommendation does not address Defendants' argument that the claims for money damages and for violations of the Constitution other than Fourteenth Amendment due process should be dismissed.  The arguments that Plaintiff failed to allege sufficient personal involvement of Washington, Nagy, Prior, and Uchendu, and that he failed to state a procedural due process claim, are relevant.

For the reasons discussed below, the undersigned recommends that the motion to dismiss be **GRANTED** and the motion for preliminary injunction be **DENIED AS MOOT**.

## II. ANALYSIS AND RECOMMENDATIONS

### A. Governing Standards

When deciding a motion to dismiss under Rule 12(b)(6), the Court must "construe the complaint in the light most favorable to plaintiff and accept all allegations as true." *Keys v. Humana, Inc.*, 684 F.3d 605, 608 (6th Cir. 2012). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation omitted); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (concluding that a plausible claim need not contain "detailed factual allegations," but it must contain more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action"). Facial plausibility is established "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "The plausibility of an inference depends on a host of considerations, including common sense and the strength of competing explanations for the defendant's conduct." *16630 Southfield Ltd., P'Ship v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 503 (6th Cir. 2013).

The Court holds *pro se* complaints to "less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972). Yet even in pleadings drafted by *pro se* parties, "'courts should not have to guess at the nature of the claim asserted.'" *Frengler v. Gen. Motors*, 482 F. App'x 975, 976-77 (6th Cir. 2012) (quoting *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989)). "[C]ourts may not rewrite a complaint to include claims that were never presented ... nor may courts construct the Plaintiff's legal arguments for him. Neither may the Court 'conjure up unpled allegations[.]'" *Rogers v. Detroit Police Dept.*, 595 F. Supp. 2d 757, 766 (E.D. Mich. 2009) (Ludington, J., adopting report and recommendation of Binder, M.J.); *see also, Evans v. Mercedes Benz Fin. Servs., LLC*, No. 11-11450, 2011 WL 2936198, at *2 (E.D. Mich. July 21, 2011) (Cohn, J.) ("Even excusing plaintiff's failure to follow Rules 8(a)(2) and 10(b), a *pro se* plaintiff must comply with basic pleading requirements, including Rule 12(b)(6).").

B.  Discussion

Defendants argue that Plaintiff's due process claim should be dismissed because he received all the process that was due prior to being labelled as a sex offender, which has been confirmed in many cases in this and other circuits. (ECF No. 27, PageID.317-19). They also contend that Plaintiff has no protected liberty interest in being paroled. (*Id.* at PageID.319-21).

Plaintiff McClendon is not the first person to allege that his procedural due process rights are violated by conditioning parole eligibility on participation in sex offender programming when the sex offense sentence is no longer active. Courts have consistently found these arguments lacking, concluding that there is no due process violation. The reasoning of these courts is persuasive.

First, to establish a procedural due process violation, a party must prove that (1) he was deprived of a protected liberty or property interest, and (2) such deprivation occurred without the requisite due process of law. *Club Italia Soccer & Sports Org., Inc. v. Charter Twp. of Shelby*, 470 F.3d 286, 296 (6th Cir. 2006). There is no dispute that a prisoner has no liberty interest in parole. *See Bridges v. Mich. Parole Bd. Members*, 2020 WL 7021563, at *3-4 (W.D. Mich. Nov. 30, 2020) (collecting cases); *Sweeton v. Brown*, 27 F.3d 1162, 1164-65 (6th Cir. 1994) (no liberty interest created in Michigan' parole system); *Foster v. Booker*, 595 F.3d 353, 369 (6th Cir. 2010); *Mich. Parole Bd.*, 596 N.W.2d 598, 603-04 (Mich. 1999). Even assuming such a liberty interest exists, the claim should be dismissed for the reasons below.

In *Bridges v. Mich. Parole Bd. Members*, 2020 WL 7021563, the plaintiff argued that the requirement that he complete the Michigan Sex Offender Program before it would grant him parole violated his due process rights because he was not a convicted sex offender—he completed his sentence on a prior sex offense in

2004. Bridges sought injunctive relief requiring the parole board and the Director of the MDOC to remove his sex offender designation and the requirement that he complete the sex offender program to be eligible for parole. His case was dismissed because Bridges does not have a liberty interest in being paroled and there was no due process violation because he was previously convicted of a sex offense. *Id.* at *3-5. More specifically, the court discussed that, since being paroled is not a protected liberty interest, a condition or voluntary prerequisite of parole does not have due process protection either, unless the condition or prerequisite warrants due process protection independently. *Id.* at *4. A right to due process is required if the condition or prerequisite "(1) exceeded the sentence imposed on Plaintiff 'in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, or (2) imposed 'significant and atypical hardship in relation to the ordinary incidents of prison life.'" *Id.* (quoting *Sandin v. Conner*, 515 U.S. 472, 484 (1995) (internal citations omitted). The court concluded that Bridges was not entitled to due process because he was convicted, in the past, of a sex offense, and enjoyed procedural due process on that offense when he entered his plea. *Id.* at *5. Moreover, the Michigan Sex Offender Program offers treatment to inmates with current sex offense convictions and with histories of sexual offending. "Even if Plaintiff is not presently serving a sentence

for a current sex offense conviction, he has a history of sexual offending. The requirement that he participate in the MSOP suggests nothing more." *Id.*

Bridges recently filed another lawsuit concerning the same issues. *Bridges v. Barnes*, 2023 WL 8602271 (E.D. Mich. Dec. 12, 2023). This lawsuit was summarily dismissed largely for the reasons stated in the earlier *Bridges* case. The court stated that, even if the plaintiff had a liberty interest in parole, he was not entitled to due process in relation to the sex offender program because of his criminal history of sex offenses. In 2004, Bridges pleaded no contest to a charge of assault in exchange for dismissal of home invasion and CSC charges. The factual basis for the plea included testimony about sexual assault, thus sexual assault remained an element of the home invasion offense. The court therefore concluded that Bridges enjoyed all the necessary procedural due process during his criminal proceedings. *Id.* at *3.

Plaintiff did not address the *Bridges* cases, but does acknowledge that other courts have addressed the same factual and legal background presented here and sided with the prison. For example, in *Jennings v. Owens*, 602 F.3d 652 (5th Cir. 2010), the plaintiff had a sex offense conviction for which he was paroled in 1984. He continued to engage in various criminal acts, which subjected him to more prison time and paroles through the decades. *Id.* at 654-55. His 2005 parole conditions formed the basis of his civil rights lawsuit. The parole office sought

8

conditions on his parole related to sex offenses. *Id.* at 655. The plaintiff resisted the conditions but lost his challenge. He then filed a lawsuit claiming that the conditions violated his right to procedural due process because he did not receive notice or a hearing before imposition of the conditions. *Id.* at 656. The court rejected the claim. It said that, since Jennings had been convicted of a sex offense, the label of "sex offender" accurately reflected his status, and he had a full and fair opportunity to contest that status. So there was no due process violation when the parole board imposed sex offender special conditions on his parole for a sex offense committed decades ago. *Id.* at 659.

The Fifth Circuit distinguished its case from a somewhat-similar Supreme Court case, *Vitek v. Jones*, 445 U.S. 480 (1980), and another Fifth Circuit case, *Coleman v. Dretke* (*Coleman I*), 395 F.3d 216, 221-24 (5th Cir.2004). In *Vitek*, the Court stated that the involuntary transfer from a general population prison to a mental hospital can constitute a sufficient change in the confinement to warrant the protections of procedural due process, largely because of the stigma attached to such confinement. 445 U.S. at 492-93. Being placed in a mental hospital creates different liberty considerations than placement in sex offender programing during incarceration. In *Coleman*, the plaintiff was required to attend sex offender therapy, but had never been convicted of a sex offense. Placement in sex offender therapy in that circumstance was "'qualitatively different' from other conditions

which may attend an inmate's release." 395 F.3d at 223. Nor had Coleman had an opportunity to contest his sex offender status, so the parole conditions caused stigma. *Id.* at 221. Since Jennings had been convicted of a sex offense, the calculus was different.

Plaintiff relies in part on *Harper v. Arkesteyn*, but that case is distinguishable in the same way *Vitek* and *Coleman* are. In *Harper*, the plaintiff alleged that he was improperly classified as a sex offender when he began serving a sentence on a non-sex crime conviction. He asserted that he was entitled to a hearing on his new classification but was not given one. The Sixth Circuit concluded that the case should not have been dismissed because "the complaint contain[ed] sufficient factual matter to support a plausible claim that his procedural-due-process rights were violated when the defendants classified him as a sex offender." 2020 WL 4877518, at *3 (6th Cir. Apr. 28, 2020). The court considered that the plaintiff had never been convicted of a sex crime or accused of any sexual wrongdoing during his incarceration. The Court noted that "the stigmatizing consequences of being labeled a sex offender, when coupled with mandated behavioral modification therapy, constituted the kind of deprivation of liberty that requires procedural protections." *Id.* On remand in *Harper*, 2022 WL 356733 (E.D. Mich. Feb. 4, 2022), the court reiterated that the plaintiff was sentenced for a non-sex offense, and thus the MDOC was not authorized to classify him as a sex offender and

10

subject him to sex offender treatment without first affording him due process protections. Because Harper was not convicted of a sex offense, he never had the opportunity to challenge a "sex offender" status, unlike Plaintiff and the plaintiffs in the analogous cases.

Plaintiff urges the Court not to follow the analogous cases as "not everyone would agree with this strict and draconian approach." (ECF No. 29, PageID.367). He notes that the District Court for the District of Columbia declined to follow *Jennings*. (*Id.* citing *Goings v. Court Servs. Offender Supervision Agency*, 786 F. Supp. 2d 48, 74, n.15 (D.D.C., 2011)). That case is distinguishable. First, the plaintiff in *Goings* had been released and was challenging conditions imposed on his term of probation without first having a hearing to determine the conditions. 786 F. Supp. 2d at 53. Plaintiff McClendon is still incarcerated serving a sentence seeking early release through parole. This is a key difference between the cases. Second, though the court found many conditions violated procedural due process, it did not find the condition that he attend sex offender therapy to violate due process. The plaintiff insisted that undergoing this treatment would require him to divulge personal information, and he had a liberty interest in keeping that information private. The court disagreed and reasoned that, although he may have to divulge some personal information, that information was used for the purpose of his treatment, not for public dissemination. *Id.* at 75. Plaintiff here does not make

11

a personal privacy argument against the sex offender program.  In a footnote, the court stated that there was no legal support for the contention that a person has no liberty interest with respect to any probation conditions because those convicted of sex offenses have no liberty interest in being free from sex offender conditions.  *Id.* at 74, n. 15.  This footnote in an out-of-circuit case does not require this Court to find that Plaintiff, who was convicted of a sex offense, has a liberty interest in being paroled without first going through sex offender programing.

Plaintiff also insists we should rule in his favor because *Jennings* and other cases did not consider the mental illness aspect of involuntary prison-based sex offender mental health treatment.  However, "requiring a convicted sex offender to undergo rehabilitative treatment related to that offense is wholly different than requiring a prisoner to undergo involuntary health treatment."  *Catanzaro v. Harry*, 848 F. Supp. 2d 780, 795 (W.D. Mich. 2012).  There is "a distinction between imposing sex-offender classifications and requiring sex-offender treatment of those convicted of sex offenses and imposing that classification and requiring such treatment of those who were not."  *Bridges v. Mich. Parole Bd. Members*, 2020 WL 7021563, at *5 (citing *Catanzaro*, 858 F. Supp. 2d at 796).

The undersigned is persuaded by the line of analogous cases finding that persons in Plaintiff's position do not have a liberty interest in being paroled and that requiring participation in sex offender programming as a prerequisite to parole

does not implicate due process considerations because he had a full opportunity to challenge his "sex offender" status. The procedural due process claim should be dismissed.[1] Given this recommendation, Plaintiff's motion for preliminary injunction (ECF No. 17) should be denied or terminated as moot.[2]

## III.   RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that Defendants' amended motion to dismiss (ECF No. 27) be **GRANTED**, that their original motion to dismiss (ECF No. 20) be **TERMINATED AS MOOT**, and that Plaintiff's motion for injunctive relief (ECF No. 17) be **DENIED OR TERMINATED AS MOOT**.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and*

---

[1] Given this recommendation, the undersigned will not address Defendants' motion as it relates to the personal involvement of Washington, Nagy, Prior, and Uchendu. Even were the Court to agree that Plaintiff should have an opportunity to amend the complaint to raise more fulsome allegations, the amendment would be futile because the underlying Fourteenth Amendment claim should be dismissed.

[2] To succeed on a motion for preliminary injunction, Plaintiff must show a likelihood of success on the merits, among other things. "Although no one factor is controlling, a finding that there is simply no likelihood of success on the merits is usually fatal." *Gonzales v. National Bd. of Med. Examiners*, 225 F.3d 620, 625 (6th Cir. 2000). As shown here, Plaintiff is not likely to succeed on the merits.

13

*Human Servs.*, 932 F.2d 505 (6th Cir. 1981). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Loc. 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2), Local Rule 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date:  April 11, 2024.                              s/Curtis Ivy, Jr.
                                                   Curtis Ivy, Jr.
                                                   United States Magistrate Judge