UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Anthony McClendon El,

        Plaintiff,    Case No. 23-10739

v.    Judith E. Levy
    United States District Judge

Heidi Washington, *et al.*,

    Mag. Judge Curtis Ivy, Jr.

        Defendants.

_____/

**OPINION AND ORDER OVERRULING PLAINTIFF'S OBJECTION [37], ADOPTING THE REPORT AND RECOMMENDATION [33], GRANTING DEFENDANTS' AMENDED MOTION TO DISMISS [27], AND DENYING AS MOOT DEFENDANTS' ORIGINAL MOTION TO DISMISS [20] AND PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION [17]**

Magistrate Judge Curtis Ivy, Jr. issued a Report and Recommendation ("R&R") (ECF No. 33) recommending that the Court (1) grant Defendants' amended motion to dismiss (ECF No. 27), (2) deny as moot Defendants' original motion to dismiss (ECF No. 20), and (3) deny as moot Plaintiff's motion for injunctive relief. (ECF No. 17.) Judge Ivy issued the R&R on April 11, 2024. (ECF No. 33.) Plaintiff filed one

objection to the R&R. (ECF No. 37.) Defendants responded to Plaintiff's objection (ECF No. 39), and Plaintiff filed a reply. (ECF No. 40.)

For the reasons set forth below, Plaintiff's objection is overruled.

## I. Background

The factual and procedural background set forth in the R&R is fully adopted as though set forth in this Opinion and Order.[1]

## II. Legal Standard

A party may object to a magistrate judge's report and recommendation on dispositive motions, and a district judge must resolve proper objections under a de novo standard of review. 28 U.S.C. § 636(b)(1)(B)–(C); Fed. R. Civ. P. 72(b)(1)–(3). "For an objection to be proper, Eastern District of Michigan Local Rule 72.1(d)(1) requires parties to 'specify the part of the order, proposed findings, recommendations, or report to which [the party] objects' and to 'state the basis for the objection.'" *Pearce v. Chrysler Group LLC Pension Plan*, 893 F.3d 339, 346 (6th Cir. 2018). Objections that restate

---

[1] The Court has one point of clarification. The R&R states that Plaintiff was sentenced to "3-20 years in prison" in January 2005 for assault with intent to do great bodily harm less than murder. (ECF No. 33, PageID.409). Plaintiff's sentence for this assault conviction is 3-10 years in prison. (ECF No. 1, PageID.16; *see also* ECF No. 27-2, PageID.337.)

arguments already presented to the magistrate judge are improper, *Coleman-Bey v. Bouchard*, 287 F. App'x 420, 422 (6th Cir. 2008) (citing *Brumley v. Wingard*, 269 F.3d 629, 647 (6th Cir. 2001)), as are those that are vague and dispute the general correctness of the report and recommendation. *Miller v. Currie*, 50 F.3d 373, 380 (6th Cir. 1995).

Moreover, objections must be clear so that the district court can "discern those issues that are dispositive and contentious." *Id.* (citing *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505, 509 (6th Cir. 1991)); *see also Thomas v. Arn*, 474 U.S. 140, 147 (1985) (explaining that objections must go to "factual and legal" issues "at the heart of the parties' dispute"). In sum, the objections must be clear and specific enough to permit the Court to squarely address them on the merits. *See Pearce*, 893 F.3d at 346. Because Plaintiff initiated the case as a self-represented party, the Court will construe his complaint liberally. *See Boswell v. Mayer*, 169 F.3d 384, 387 (6th Cir. 1999) ("Pro se plaintiffs enjoy the benefit of a liberal construction of their pleadings and filings."); *Stanley v. Vining*, 602 F.3d 767, 771 (6th Cir. 2010) (stating that "we read a [*pro se*] prisoner's complaint liberally").

## III. Analysis

The R&R recommends that the Court grant Defendants' amended motion to dismiss. (ECF No. 33, PageID.420.) In light of this recommendation, the R&R further recommends that Defendants' original motion to dismiss and Plaintiff's motion for injunctive relief be denied as moot. (*Id.*)

Plaintiff filed one objection. (ECF No. 37, PageID.432.) In his objection, Plaintiff urges the Court to review the R&R's finding that Plaintiff "does not possess a liberty interest to support a procedural due process claim." (*Id.*) He argues that the R&R did not "take into consideration the mental illness aspect of involuntary prison-based sex offender mental health treatment." (*Id.* at PageID.434–435.)[2]

---

[2] To the extent that Plaintiff requests that the Court "review *de novo*" the briefing for the amended motion to dismiss (ECF No. 37, PageID.433–434), that request is denied. Plaintiff seems to contend that the R&R should be reviewed because it relies on persuasive, not precedential, authorities in its "determination that [Plaintiff] does not possess a liberty interest to support a procedural due process claim." (*Id.* at PageID.432–434.)

Objections that are vague and dispute the general correctness of the R&R are improper. *Miller*, 50 F.3d at 380. Plaintiff's request that the Court conduct a *de novo* review of the briefing lacks specificity and appears to dispute the general correctness of the R&R, which is improper.

4

"To establish a procedural due process claim pursuant to [42 U.S. Code] § 1983, plaintiffs must establish three elements: (1) that they have a life, liberty, or property interest protected by the Due Process Clause of the Fourteenth Amendment to the United States Constitution, (2) that they were deprived of this protected interest within the meaning of the Due Process Clause, and (3) that the state did not afford them adequate procedural rights prior to depriving them of their protected interest." *Hahn v. Star Bank*, 190 F.3d 708, 716 (6th Cir. 1999). "A liberty interest may arise from the Constitution itself, by reason of the guarantees implicit in the word 'liberty,' or it may arise from an expectation or interest created by state laws or policies[.]" *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005) (citations omitted).

A prisoner, due to their incarceration, has more limited rights and privileges. *Sandin v. Conner*, 515 U.S. 472, 485 (1995). For example, a prisoner cannot establish a liberty interest when they seek freedom from state actions that are taken "within the sentence imposed upon [them]." *Hewitt v. Helms*, 459 U.S. 460, 468 (1983). A liberty interest can be established by a prisoner two ways: (1) by identifying "a change in the prisoner's conditions of confinement [] so severe that it

5

essentially exceeds the sentence imposed by the court"; or (2) identifying a benefit created by state law or policy and demonstrating that the deprivation "of that benefit imposes an 'atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'" *Bridges v. Mich. Parole Bd.*, No. 20-2224, 2021 U.S. App. LEXIS 18715, at *5 (6th Cir. June 22, 2021) (quoting *Sandin*, 515 U.S. at 484–87); *Vitek v. Jones*, 445 U.S. 480, 491–92 (1980); *Wilkinson*, 545 U.S. at 221. (*See also* ECF No. 33, PageID.414.)

In the R&R, Judge Ivy reviewed cases in which a plaintiff "allege[d] that his procedural due process rights are violated by conditioning parole eligibility on participation in sex offender programming." (ECF No. 33, PageID.413.) These courts found that plaintiffs who were required to participate in sex offender programming when they had no prior sex offenses were deprived of their due process rights, *Coleman v. Dretke*, 395 F.3d 216, 221–23 (5th Cir. 2004); *Harper v. Arkesteyn*, No. 19-1928, 2020 WL 4877518, at *3 (6th Cir. Apr. 28, 2020), while those who had prior sex offense convictions could be compelled to participate in these programs with no additional due process. *Bridges v. Michigan Parole Bd. Members*, No. 1:20-CV-1138,

6

2020 WL 7021563, at *5 (W.D. Mich. Nov. 30, 2020); *Bridges v. Barnes*, No. 2:23-CV-11772, 2023 WL 8602271, at *3–4 (E.D. Mich. Dec. 12, 2023); *Jennings v. Owens*, 602 F.3d 652, 659 (5th Cir. 2010). The R&R concludes that "[t]he reasoning of these courts is persuasive" (ECF No. 33, PageID.413), and the Court agrees.

However, Plaintiff's claim differs from these cases because Plaintiff seeks to establish a liberty interest that was not addressed by any of these courts. Plaintiff wishes to establish a liberty interest "in not being forced into mental health treatment along with a transfer to a MDOC Sex Offender [Michigan Sexual Abuse Prevention Program ("MSAPP")[3]] unit." (ECF No. 29, PageID.375; ECF No. 37, PageID.436, 438–439.) He maintains that he is not trying to establish a liberty interest in parole, which would not be possible. As stated in the R&R, "[t]here is no dispute that a prisoner has no liberty interest in parole." (ECF No. 33, PageID.413; *see also* ECF No. 37, PageID.438.)[4]

---

[3] According to Defendants, the program known as the Michigan Sex Offender Program ("MSOP") recently changed its title to the Michigan Sexual Abuse Prevention Program ("MSAPP"). (ECF No. 27, PageID.296.) When the Court refers to MSAPP, it refers to the program, both before and after its name change.

[4] However, Plaintiff also states that he "identified a valid liberty interest that Defendants have infringed upon when they repeatedly denied him parole on account

7

As set forth in the objection, Plaintiff seeks to establish a liberty interest under the "state law or policy" prong. (*See* ECF No. 29, PageID.368 ("The prison conditions at issue here certainly represent an 'atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life. . . .") (quoting *Sandin*, 515 U.S. at 484); ECF No. 40, PageID.460 ("[A] liberty interest may arise from . . . an expectation or interest created by state laws or policies.") (quoting *Wilkinson*, 545 U.S. at 221).) Thus, Plaintiff must identify a benefit created by state law or policy and demonstrate that the deprivation "of that benefit imposes an 'atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'" *Bridges*, 2021 U.S. App. LEXIS 18715, at *5 (quoting *Sandin*, 515 U.S. at 484–87).

However, Plaintiff is unable to demonstrate an applicable benefit created by state law or policy and, as a result, has not established a liberty interest.

---

of his refusal to complete mental health treatment." (ECF No. 40, PageID.461.) To the extent that this attempts to establish a liberty interest in parole, it is rejected. (ECF No. 33, PageID.413.) Instead, the Court will construe this discussion of parole as an explanation of why Plaintiff believes he is being coerced.

8

Plaintiff states that the "benefit created by state law or policy" is the required process when prisoners are subject to involuntary mental health treatment. (ECF No. 37, PageID.439 ("[A] Michigan prisoner has a right to a hearing before involuntary mental health treatment is forced upon him.").) Plaintiff cites a plethora of Michigan statutes and then claims that these statutes confer this benefit to him.

First, Plaintiff points to Mich. Comp. Laws §§ 330.1531 and 330.1532. (ECF No. 37, PageID.435; ECF No. 29, PageID.370.) However, neither statute applies to Plaintiff. Mich. Comp. Laws §§ 330.1531 and 330.1532, which are part of Chapter 5 of the Mental Health Code, apply to people with developmental disabilities. *See In re Blackshear*, 262 Mich. App. 101, 109 (2004). Plaintiff does not allege that he has or that anyone believes he has a developmental disability. (ECF No. 1.)

Next, Plaintiff references Mich. Comp. Laws § 330.1482 (ECF No. 37, PageID.435; ECF No. 20, PageID.370), but this statute pertains to those who are subject to a "1-year order of involuntary mental health treatment." *See also id.* § 330.1472a(1) (describing procedures a court must follow to issue a 1-year order of involuntary mental health

9

treatment). Plaintiff does not allege that he is subject to such an order. (ECF No. 1.)

Plaintiff also points to Mich. Comp. Laws §§ 330.2003a, 330.2003c, and 330.2005d. (ECF No. 37, PageID.435, 437.) These statutes apply to state prisoners, and set forth "procedures [that] apply to involuntary admission to the corrections mental health program." Mich. Comp. Laws § 330.2003a. For example, these statutes address what process must be deployed before a psychiatrist may order a prisoner to receive an involuntary administration of psychotropic medications, and who may make a finding of mental illness or developmental disability. Mich. Comp. Laws §§ 330.2003a, 330.2003c, 330.2005d.

As a matter of statutory interpretation, the procedures described by §§ 330.2003a, 330.2003c, and 330.2005d do not apply to Plaintiff because these procedures "apply to **involuntary** admission to the corrections mental health program." Mich. Comp. Laws § 330.2003a (emphasis added); *see also id.* § 330.2003c (applying "[i]f a prisoner refuses treatment or services recommended under [§ 330.2003a]); *id.* § 300.2005d (discussing orders for treatment under [§ 330.2003c]). While Plaintiff argues that his interactions with MSAPP constitute an

10

"involuntary admission to the corrections mental health program," the Court disagrees.

MSAPP does not fall under § 330.2003a because it is not an "involuntary [] correction mental health program." Within the context of the statute, it is clear that "involuntary admission" means participating in a program that one cannot refuse. Mich. Comp. Laws § 330.2003a; *Bush v. Shabahang*, 484 Mich. 156, 167 (2009) (footnotes omitted) (explaining that courts conducting statutory interpretation should generally interpret individual words "in the context of the entire legislative scheme"). According to §§ 330.2003a and 330.2003c, if a prisoner refuses the recommended mental health treatment, they will be forced to undergo treatment if so designated after a hearing. Mich. Comp. Laws § 330.2003a(h) ("If the hearing committee finds that the prisoner is mentally ill or developmentally disabled and that the proposed services are suitable to the prisoner's condition, the corrections mental health program shall provide the mental health services designated by the hearing committee."). Plaintiff's complaint alleges that Plaintiff refused to participate in MSAPP and is not

11

currently in MSAPP. (ECF No. 1, PageID.9, 19, 29.) Thus, Plaintiff has not been involuntarily admitted to any mental health program.[5]

Plaintiff maintains that his participation in MSAPP is "coerced" and "involuntary" (ECF No. 37, PageID.437) because it is "an undeniable fact" that "repeatedly denying a prisoner parole . . . equates to the type of duress that states a claim for relief." (ECF No. 40, PageID.459; *see also* ECF No. 37, PageID.436.) In support, Plaintiff points to an opinion from the Connecticut Supreme Court, *Anthony A. v. Commissioner of Corrections*, 326 Conn. 668, 682–83 (2017) (collecting cases). However, this Connecticut case has no bearing on the interpretation of these Michigan statutes.

*Anthony A.* and the federal cases it cites do not define "involuntary admission." Instead, they address an entirely different issue: the standard for determining whether a prisoner has a liberty interest when a state action has "stigmatizing consequences" and other costs,

---

[5] Further, the Court is unable to identify any caselaw suggesting that these statutes apply to MSAPP participation.

such as losing eligibility for parole.[6] *Id.* at 683–84. This passage is irrelevant to the Court's interpretation of Michigan state law.

The bottom line is that Plaintiff must demonstrate that he has a benefit conferred by Michigan law or policy. Plaintiff attempts to argue that the Michigan laws set forth above that pertain to "involuntary admission to the corrections mental health program" should apply to him, but he does not demonstrate an interpretation of these laws such that they would encompass MSAPP. Mich. Comp. Laws §§ 330.2003a, 330.2003c, and 330.2005d. Because these statutes cannot be interpreted to apply to MSAPP, the Court does not find that MSAPP should be considered an involuntary corrections mental health program under Michigan law; thus, Plaintiff has not identified a benefit conferred under state law.[7]

For the reasons set forth above, Plaintiff's objection is overruled.

---

[6] The Court notes that the Sixth Circuit has not formally adopted this standard. *See Bridges*, 2021 U.S. App. LEXIS 18715, at *5–6 ("We have suggested—though not held—that a prisoner may have a liberty interest in not being labelled a sex offender and therefore is entitled to adequate process due to the stigma attached to such a classification.").

[7] Plaintiff's analogizing between this case and the situation in *Vitek v. Jones*, 445 U.S. 480, is not convincing. (ECF No. 37, PageID.435, 439.) Unlike *Vitek*, Plaintiff did not identify a liberty interest rooted in a state statute. *Id.* at 488.

13

## IV. Conclusion

For the reasons set forth above, Plaintiff's objection is OVERRULED. The R&R (ECF No. 33) is ADOPTED.

Defendants' amended motion to dismiss (ECF No. 27) is GRANTED. Defendants' original motion to dismiss (ECF No. 20) and Plaintiff's motion for preliminary injunction are DENIED AS MOOT. (ECF No. 17.)

IT IS SO ORDERED.

Dated: September 26, 2024  　　s/Judith E. Levy
　　Ann Arbor, Michigan　　JUDITH E. LEVY
　　　　　　　　　　　　　United States District Judge

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or first-class U.S. mail addresses disclosed on the Notice of Electronic Filing on September 26, 2024.

　　　　　　　　　　　　s/William Barkholz
　　　　　　　　　　　　WILLIAM BARKHOLZ
　　　　　　　　　　　　Case Manager